United States Court of Appeals,

Fifth Circuit.

No. 92-5698.

In the Matter of David Marvin SWIFT, d/b/a State Farm Insurance, Debtor.

David Martin SWIFT, d/b/a State Farm Insurance, Appellant,

v.

The BANK OF SAN ANTONIO, Appellee.

Oct. 8, 1993.

Appeal from the United States District Court for the Western District of Texas.

Before JONES and DeMOSS, Circuit Judges and BARBOUR[*], District Judge.

EDITH H. JONES, Circuit Judge:

Appellant Swift is an insurance agent in San Antonio, Texas, who filed Chapter 7 bankruptcy on March 1, 1990. He has appealed the bankruptcy court's determination, affirmed by the district court, 126 B.R. 725 (Bankr.W.D.Tex.1991), that his discharge should be barred because he transferred, concealed or disposed of property within one year before filing with the intent to hinder, delay or defraud creditors. 11 U.S.C. § 727(a)(2). Finding no clear error in the court's findings of fact,[1] we affirm.

As a caution to those who might hope to take unfair advantage of the liberality of bankruptcy discharge provisions, the transactions in which Swift engaged just before bankruptcy should be summarized. Reviewing the evidence, the bankruptcy court concluded that Swift gambled and lost on the discharge of $2,000,000 in debt by engaging in "cute" transactions that involved approximately $20,000 of his estate. The net effect of these transactions, however, was to dispose of or encumber his only non-exempt assets. The court also concluded that Swift would not be shielded by the fact

[*]Chief Judge of the Southern District of Mississippi, sitting by designation.

[1]This court has recently held that the burden of proof on objections to discharge is by the preponderance of the evidence. *In re Beaubouef,* 966 F.2d 174 (5th Cir.1992). The bankruptcy court applied this standard. The court also denied discharge based on 11 U.S.C. § 727(a)(4), but we do not reach that aspect of his decision.

that he consulted with numerous attorneys before engaging in these transactions. As the court found, the transactions were not simply innocent pre-bankruptcy planning. *Matter of Reed,* 700 F.2d 986 (5th Cir.1983). The transactions, all accomplished within a couple of months before bankruptcy, were as follows:

1. Swift prepaid $5,000 in alimony or property settlement to his ex-wife. The payments would not have been due until after bankruptcy, and they would have been nondischargeable, personal obligations of Swift. He used estate money to make the payments.

2. Swift used estate funds to prepay the remaining liability on his Chevrolet Suburban truck. Contrary to his representations, this was not a payment in the ordinary course of business.

3. Despite having in hand a legal opinion that certain insurance renewal commissions were property of the estate, Swift under-reported those commissions on his schedules. The court found $18,000 due in renewal commissions; Swift reported only $6,000.

4. Swift transferred insurance policies to his 20-year old son, who, after borrowing against them, transferred the funds to Swift's ex-wife. The ex-wife then loaned the funds back to Swift, who gave her a promissory note the day before bankruptcy. As the bankruptcy court put it, "it's kind of like what happens to a lemon; [Swift] just squeezed the juice out of it and then gave the rind back to the estate."

5. Swift's daughter loaned money to her father in exchange for a promissory note, secured by Swift's interest in his furniture and fixtures, renewal commissions, boat, motor and trailer.

In evaluating Swift's intention, the court observed his evasiveness and deception, not only at trial but also in the filing of his schedules and in his testimony at the section 341 creditors' meeting. The court did not believe Swift's rationale, among others, that he borrowed from relatives because he needed cash to fund the bankruptcy proceeding; Swift's monthly cash flow from his insurance business continued to be substantial.

Based on these transactions and his credibility decision, the bankruptcy court did not clearly err in concluding that Swift completed them with intent to hinder, defraud, delay or conceal estate assets from his creditors. As the court pointed out, nearly every asset in his estate had been tampered

with before bankruptcy.  Unfortunately, the line between legitimate pre-bankruptcy planning and intent to defraud creditors contrary to section 727(a)(2) is not clear. *Northwest Bank Nebraska, N.A. v. Tveten,* 848 F.2d 871, 879 (8th Cir.1988) (Arnold, J., dissenting).  One court simply stated, "there is a principle of too much;  phrased colloquially, when a pig becomes a hog it is slaughtered." *In re Zouhar,* 10 B.R. 154, 157 (Bankr.D.N.M.1981).  As the finder of fact, the bankruptcy court has the primary duty to distinguish hogs from pigs.  *Compare Matter of Bowyer,* 916 F.2d 1056 (5th Cir.1990) (reversing bankruptcy court), op. on reh., 932 F.2d 1100 (5th Cir.1991) (affirming bankruptcy court and finding intent to hinder, delay or defraud creditors on facts before it).

The judgments of the bankruptcy and district courts are AFFIRMED.